1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10   SHANNON W.,

11                     Plaintiff,

12       v.

13   COMMISSIONER OF SOCIAL
     SECURITY,

14                     Defendant.

15

CASE NO. 3:19-CV-6143-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

16       Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of

17   Defendant's denial of Plaintiff's application for disability insurance benefits ("DIB") and

18   supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil

19   Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the

20   undersigned Magistrate Judge. *See* Dkt. 2.

21       After considering the record, the Court concludes that the Administrative Law Judge

22   ("ALJ") erred by not evaluating opinions from examining psychiatrist Dr. Salmon. Had the ALJ

23   properly considered this opinion, the residual functional capacity ("RFC") may have included

24   additional limitations. The ALJ's error is therefore harmful, and this matter is reversed and

1   remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Social Security Commissioner

2   ("Commissioner") for further proceedings consistent with this Order.

3   FACTUAL AND PROCEDURAL HISTORY

4   On August 9, 2016, Plaintiff filed applications for DIB and SSI respectively, alleging in

5   both applications a disability onset date of January 15, 2015. *See* Dkt. 8, Administrative Record

6   ("AR") 13, 257-60, 261-66. Plaintiff amended her disability onset date to October 1, 2015. AR

7   13, 96. Her applications were denied upon initial administrative review and on reconsideration.

8   AR 13, 178-86, 189-95, 196-202. A hearing was held before ALJ Allen Erickson on June 28,

9   2018. AR 32-99. In a decision dated December 5, 2018, the ALJ found that Plaintiff was not

10  disabled. AR 10-26. On September 23, 2019 the Social Security Appeals Council denied

11  Plaintiff's request for review. AR 1-6. Plaintiff filed a complaint in this Court seeking judicial

12  review of the ALJ's written decision on December 2, 2019. Dkt. 4.

13  In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by: (1) improperly

14  discounting medical opinion evidence from James Salmon, M.D., Dan M. Neims, Psy.D., Jeremy

15  Senske, Psy.D., Robert E. Sands, M.D., Brett Valette, Ph.D., Jerry Gardner, Ph.D., and Dan

16  Donohue, Ph.D.; (2) not providing germane reasons for discounting testimony from Plaintiff's

17  mother, Natalie Tajipour Glass, PA-C, and agency personnel who interviewed Plaintiff; (3) not

18  providing clear and convincing reasons for discounting Plaintiff's testimony; and (4) issuing a

19  decision when he was not properly appointed pursuant to the Appointments Clause of the United

20  States Constitution. Dkt. 12, pp. 3-19.

21  STANDARD OF REVIEW

22  Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

23  social security benefits if the ALJ's findings are based on legal error or not supported by

24

1   substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

2   Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

3   <u>DISCUSSION</u>

4   **I.      Whether the ALJ properly evaluated the medical opinion evidence.**

5          Plaintiff contends that the ALJ erred by rejecting opinions from examining sources Dr.

6   Salmon, Dr. Neims, Dr. Senske, Dr. Sands, and Dr. Valette, and non-examining state agency

7   psychologists Dr. Gardner and Dr. Donohue. Dkt. 12, pp. 3-11.

8          In assessing an acceptable medical source, an ALJ must provide "clear and convincing"

9   reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester*

10  *v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.

11  1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining

12  physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons

13  that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*

14  *v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.

15  1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts

16  and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*

17  *v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th

18  Cir. 1989)).

19  **A.      Dr. Salmon**

20         In 2015, psychiatrist Dr. Salmon, who treated Plaintiff between 2015 and 2016,

21  completed two forms in connection with Plaintiff's request for leave pursuant to the Family and

22  Medical Leave Act ("FMLA"). AR 429-30, 447-51. In the first form, dated April 1, 2015, Dr.

23  Salmon diagnosed Plaintiff with fibromyalgia, bipolar disorder, attention deficit hyperactivity

24

1  disorder ("ADHD"), Crohn's disease, and chronic kidney infections. AR 447, 450. Dr. Salmon

2  stated that Plaintiff's work-related limitations were permanent, but said that it was unclear what

3  Plaintiff's precise limitations were, and added that Plaintiff's conditions would not impair her

4  ability to perform essential job functions. *Id.*

5        Dr. Salmon stated that Plaintiff would experience flare-ups of her condition either four

6  days per week or four times per month, and these episodes would last for four days. AR 451. Dr.

7  Salmon opined that Plaintiff would require "constant supervision" when experiencing "ongoing

8  sporadic" panic attacks that would last up to four days. AR 449. Dr. Salmon added that Plaintiff

9  would not be incapacitated for a continuous period of seven days or more due to her

10  impairments, and would not need to work part-time or on a reduced work schedule. AR 451. In a

11  form dated October 7, 2015, Dr. Salmon offered an identical assessment. AR 429-30.

12        Plaintiff contends that the ALJ erred by failing to evaluate this evidence. Dkt. 12, p. 3. It

13  is unnecessary for the ALJ to "discuss all evidence presented". *Vincent on Behalf of Vincent v.*

14  *Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).

15  However, an ALJ "may not reject 'significant probative evidence' without explanation." *Flores*

16  *v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395

17  (9th Cir. 1984) (quoting *Cotter v. Harris,* 642 F.2d 700, 706-07 (3d Cir. 1981))).

18        Here, while the ALJ did discuss some of Dr. Salmon's treatment notes, finding that they

19  were inconsistent with Plaintiff's allegations concerning her panic attacks, the ALJ did not

20  evaluate Dr. Salmon's opinions concerning Plaintiff's functional limitations. AR 21, citing AR

21  404, 406, 409, 418, 420, 423, 427.

22        Defendant concedes that the ALJ erred by not assessing Dr. Salmon's opinions, but

23  contends that this constitutes harmless error, since Plaintiff has not established "a substantial

24

1  likelihood of prejudice'" from the ALJ's failure to assess this evidence. Dkt. 19, pp. 11-12, citing

2  *Molina v. Astrue*, 674 F.3d 1104, 1119 (9th Cir. 2012); *Ludwig v. Astrue*, 681 F.3d 1047, 1054

3  (9th Cir. 2012) (quoting *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir.2011)).

4    First, the Ninth Circuit has held that failing to discuss a medical opinion generally does

5  not constitute harmless error. *Hill v. Astrue,* 698 F.3d 1153, 1160 (9th Cir. 2012) ("the ALJ's

6  disregard for Dr. Johnson's medical opinion was not harmless error and Dr. Johnson's opinion

7  should have been considered") (citing 20 C.F.R. § 404.1527(c) (noting that this regulation

8  requires the evaluation of "every medical opinion" received)).

9    Second, Plaintiff was prejudiced by the fact that the ALJ did not evaluate Dr. Salmon's

10  opinions, given that the vocational expert ("VE") testified that for an individual with limitations

11  potentially consistent with those assessed by Dr. Salmon, such as missing more than one

12  workday per month or requiring two or more additional breaks per workday, there would not be

13  a significant number of jobs available that such an individual could perform at step five of the

14  sequential evaluation. AR 94.

15    **B.**  **Dr. Neims**

16    Dr. Neims examined Plaintiff on December 6, 2016 for the Washington Department of

17  Social and Health Services ("DSHS"). AR 567-85. Dr. Neims' evaluation consisted of a clinical

18  interview, a mental status examination, psychological testing, and a review of DSHS case intake

19  notes. Based on this evaluation, Dr. Neims opined that Plaintiff would have a range of moderate

20  and marked work-related mental limitations, and that Plaintiff's overall degree of impairment

21  was marked. AR 568-69.

22    The ALJ assigned "little weight" to Dr. Neims' opinion, reasoning that it was

23  inconsistent with: (1) the results of Dr. Neims' own examination; (2) largely normal mental

24

1   status examinations conducted during the period at issue; (3) Plaintiff's significant improvement

2   with medication; and (4) Plaintiff's self-reported activities of daily living. AR 23.

3       With respect to the ALJ's first reason, an internal inconsistency can serve as a specific

4   and legitimate reason for discounting a physician's opinion. *See Morgan v. Comm'r of Soc. Sec.*

5   *Admin.*, 169 F.3d 595, 603 (9th Cir. 1999); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th

6   Cir. 2001) (upholding ALJ's rejection of an internally inconsistent medical opinion).

7       Here, the ALJ found that the marked limitations assessed by Dr. Neims were inconsistent

8   with the normal results of Dr. Neims' mental status examination. AR 23, 570. The ALJ's

9   conclusion is broadly supported by the results of this examination, which indicate that while

10   Plaintiff exhibited an anxious and dysphoric mood, moderate lability, and borderline

11   concentration, she otherwise displayed a cooperative attitude, intact appearance, speech, thought

12   processes, orientation, perception, and fund of knowledge. AR 569-70. Dr. Neims stated that he

13   was unable to fully assess Plaintiff's memory, and expressed some concerns regarding Plaintiff's

14   insight and judgment, but found that both were within normal limits. AR 570.

15       Accordingly, the ALJ has provided a specific and legitimate reason for discounting Dr.

16   Neims' opinion. While the ALJ has provided additional specific and legitimate reasons for

17   discounting Dr. Neims' opinion, the Court need not assess whether these reasons were proper, as

18   any error would be harmless. *See Presley-Carrillo v. Berryhill*, 692 Fed. Appx. 941, 944-45 (9th

19   Cir. 2017) (citing *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir.

20   2008)) (although an ALJ erred on one reason he gave to discount a medical opinion, "this error

21   was harmless because the ALJ gave a reason supported by the record" to discount the opinion).

22

23

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 6

C.      **Dr. Senske**

Dr. Senske examined Plaintiff twice, in March and April 2017. AR 1024-36. Dr. Senske's examinations consisted of clinical interviews, mental status examinations, and psychological testing. Dr. Senske summarized the results of his tests, but did not provide an opinion concerning Plaintiff's precise functional limitations. AR 1026-28.

The ALJ assigned "little weight" to Dr. Senske's opinion, reasoning that: (1) Dr. Senske did not provide an opinion concerning Plaintiff's specific workplace limitations; and (2) to the extent Dr. Senske's report was meant to provide an assessment of Plaintiff's mental limitations, it was inconsistent with normal mental status examinations conducted during the period at issue. AR 23-24.

A finding that a medical opinion does not contain specific functional limitations, or is otherwise too vague to useful in making a disability determination, can serve a specific and legitimate reason for discounting that opinion. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (holding that statement that the plaintiff would have "decreased concentration skills" was too vague to be useful in the disability determination).

Here, Dr. Senske's opinion consists of an explanation of his examination findings, which indicate that Plaintiff has "below average" cognitive and intellectual functioning, "struggled a bit" with attention and concentration, endorsed "significant" memory difficulties during a self-evaluation, and appeared to be "struggling significantly" with anxiety, depression, and other emotional factors. AR 1026-28. As such, the ALJ's finding that Dr. Senske's opinion does not provide an opinion concerning Plaintiff's specific workplace limitations is supported by substantial evidence. Further, Plaintiff does not allege that Dr. Senske's findings would require

1  work-related functional limitations beyond the significant work-related mental restrictions

2  already contained in Plaintiff's RFC. AR 18-19.

3      **D.    Dr. Sands**

4      Dr. Sands provided a statement concerning Plaintiff's mental impairments on May 16,

5  2018. AR 1023. Dr. Sands stated that he examined Plaintiff four times in 2017 and 2018, and

6  diagnosed her with bipolar disorder, ADHD, anxiety disorder, and opiate and benzodiazepine

7  dependence. *Id.* Dr. Sands opined that Plaintiff was unable to work during the period of

8  treatment, stated that her symptoms were consistent her allegations, and noted that Plaintiff was

9  not a malingerer. *Id.*

10      The ALJ assigned "little weight" to Dr. Sands' opinion, reasoning that: (1) it was

11  inconsistent with mental status examinations conducted during the period at issue, including his

12  own; (2) it was inconsistent with Plaintiff's self-reported activities of daily living; (3) Dr. Sands

13  offers an opinion on a question of disability reserved for the Commissioner of Social Security;

14  and (4) Dr. Sands' opinion is inconsistent with Dr. Valette's opinion. AR 23.

15      With respect to the ALJ's first reason, an inconsistency with the medical record can serve

16  as a specific and legitimate reason for discounting limitations assessed by a physician. *See* 20

17  C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is

18  with the record as a whole, the more weight [the Social Security Administration] will give to that

19  medical opinion."); *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (An ALJ may give

20  less weight to medical opinions that conflict with treatment notes).

21      Here, the ALJ found that Dr. Sands' opinion was inconsistent with the vast majority of

22  mental status exam and psychiatric findings throughout the record, which show generally normal

23  mental functioning. AR 23. The ALJ's finding is supported by the record, which indicates that

24

1   with the exception of some slight to moderate anxiety, Plaintiff typically exhibited normal

2   mental functioning on examination. AR 23, 492, 496, 499, 502, 505, 509, 521, 524, 531, 547,

3   1195.

4        Accordingly, the ALJ has provided a specific and legitimate reason for discounting Dr.

5   Sands' opinion.

6        **E.     Dr. Valette**

7        Dr. Valette examined Plaintiff on January 15, 2017. AR 382-87, 607-13, 617-22. Dr.

8   Valette's evaluation consisted of a clinical interview, a mental status examination, and

9   psychological testing. Based on this evaluation, Dr. Valette opined that Plaintiff could

10  understand, remember, and carry out simple and detailed, but not complex, instructions. AR 387,

11  613, 622. Dr. Valette added that Plaintiff could maintain concentration and attention sufficient to

12  carry out simple, but not detailed and complex, instructions. *Id.* Dr. Valette further opined that

13  Plaintiff could interact appropriately with supervisors, co-workers, and the public. *Id.*

14       The ALJ gave "significant weight" to Dr. Valette's opinion, reasoning that it was based

15  on an in-person examination, and was consistent with the medical record and Plaintiff's self-

16  reported activities of daily living. AR 21-22.

17       Plaintiff contends that the ALJ mistakenly referred to Dr. Valette's "January 2016 and

18  January 2017" opinions, when the record only contains three copies of Dr. Valette's January

19  2017 opinion. Dkt. 12, p. 9. The ALJ's error is understandable and harmless, since one of the

20  three otherwise identical examinations states that it was rendered in January 2016 and since

21  Plaintiff does not allege any specific prejudice stemming from it. AR 382.

22       Plaintiff contends that Dr. Valette's findings are consistent with Dr. Senske's. Dkt. 12, p.

23  9. For the reasons discussed above, the ALJ properly discounted Dr. Senske's opinion, and the

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 9

1  ALJ's evaluation of Dr. Valette's opinion is supported by substantial evidence. *See supra*

2  Section I.C.

3      **F.      Dr. Gardner and Dr. Donohue**

4          In January and March 2017, non-examining state agency psychologists Dr. Gardner and

5  Dr. Donohue offered opinions concerning Plaintiff's work-related mental functioning. AR 114-

6  16, 130-33, 152-54, 172-74.

7          Both Dr. Gardner and Dr. Donohue opined that Plaintiff's memory functioning was

8  sufficient to allow for recall of simple, short instructions and directives; she could complete

9  simple and routine tasks, but that Plaintiff would have difficulty maintaining the level of focus

10 necessary to consistently complete complex tasks. *Id.* Dr. Gardner and Dr. Donohue further

11 opined that Plaintiff could persist for the completion of tasks within the tolerances of competitive

12 employment, and work not requiring extensive collaboration with peers would be beneficial. *Id.*

13 Both psychologists opined that Plaintiff would be capable of engaging with supervisors to the

14 extent that would be anticipated in simple and routine tasks, stated that Plaintiff's ability to adapt

15 to change would be limited by poor response to stress, and opined that Plaintiff would benefit

16 from a stable work environment where changes and expectations are clearly communicated. *Id.*

17         The ALJ assigned "significant weight" to the opinions of Dr. Gardner and Dr. Donohue,

18 reasoning that they were consistent with the opinion of Dr. Valette, who examined Plaintiff, and

19 with the medical record. AR 22.

20         Plaintiff argues that the opinions of Dr. Gardner and Dr. Donohue are not consistent with

21 the record, and contends that they were unable to review any evidence received after March

22 2017. Dkt. 12, p. 11. In arguing that these opinions are inconsistent with the record, Plaintiff is

23 merely offering an alternative interpretation of the record, and when the evidence is susceptible

24

1   to more than one rational interpretation, the Court must uphold the ALJ's findings if they are

2   supported by inferences reasonably drawn from the record. *See Molina v. Astrue*, 674 F.3d 1104,

3   1111 (9th Cir. 2012).

4       Plaintiff's argument that Dr. Gardner and Dr. Donohue were unable to review medical

5   records received after March 2017 is unpersuasive, given that only two medical opinions, those

6   of Dr. Sands and Dr. Senske, which the ALJ properly discounted, were rendered after this date.

7   AR 1023, 1024-36.

8       **II.      Whether the ALJ was properly appointed pursuant to the Appointments**
        **Clause of the United States Constitution.**

9

10      Plaintiff, citing the United States Supreme Court's decision in *Lucia v. Securities and*

    *Exchange Commission*, 138 S. Ct. 2044 (2018), contends that the ALJ who presided over her

11

12  case was an "Officer of the United States" within the meaning of the Constitution's

13  Appointments Clause who was not constitutionally appointed consistent with that provision. Dkt.

    12, pp. 18-19.

14

15      The Appointments Clause provides the exclusive means of appointing "Officers of the

16  United States." U.S. Const., Art. II, § 2, cl. 2. While principal officers must be nominated by the

17  President and confirmed by the Senate, Congress may vest the appointment of "inferior" officers

    in "the President alone," "the Courts of Law," or "the Heads of Departments." *Id.*

18

19      The Supreme Court has set forth standards for distinguishing inferior officers from

20  employees. *See Lucia*, 138 S. Ct. at 2047 (noting that to qualify as an officer, rather than an

21  employee, an individual must occupy a continuing position established by law and must exercise

    significant authority pursuant to the laws of the United States) (internal citations omitted).

22

23      In *Lucia*, the Supreme Court held that ALJs at the Securities and Exchange Commission,

24  who receive career appointments, have the authority to take testimony, conduct trials, rule on the

1    admissibility of evidence, and enforce compliance with discovery orders qualified as "officers"

2    of the United States. *Id.* at 2047-48.

3         Defendant does not dispute that the holding in *Lucia* applies to SSA ALJs, and does not

4    contest that, at the time of Plaintiff's hearing, the ALJ who presided over Plaintiff's case had not

5    been properly appointed pursuant to the Appointments Clause. Instead, Defendant argues that

6    Plaintiff forfeited her argument concerning the Appointments Clause by not raising it before the

7    Social Security Administration. Dkt. 19, pp. 14-21.

8         A constitutional challenge under the Appointments Clause is "nonjurisdictional" and a

9    party may forfeit such a challenge by failing to raise it during the administrative process. *See*

10   *Freytag v. Comm'r*, 501 U.S. 868, 878 (1991) (noting that Appointments Clause challenges are

11   "nonjurisdictional structural constitutional objections"); *Consumer Fin. Prot. Bureau v. Gordon*,

12   819 F.3d 1179, 1189–90 (9th Cir. 2016); *see also Lucia*, 138 S. Ct. at 2048 (quoting *Ryder v.*

13   *United States*, 515 U.S. 177, 182 (1995) ("'[O]ne who makes a timely challenge to the

14   constitutional validity of the appointment of an officer who adjudicates his case' is entitled to

15   relief.")

16        To be timely raised, an Appointments Clause challenge must be raised before the

17   administrative agency. *See Zumwalt v. Nat'l Steel and Shipbuilding Co.*, 796 F. App'x 930, 931–

18   32 (9th Cir. 2019) (holding Appointments Clause challenge based on *Lucia* was forfeited when

19   not raised before the Department of Labor Benefits Review Board); *Cooper v. SEC*, 788 F.

20   App'x 474, 474–75 (9th Cir. 2019) (citing *Lucia*, 138 S. Ct. at 2055) (holding Appointments

21   Clause challenge was barred as not timely raised when it was not raised before the SEC);

22   *Bussanich v. Ports America*, 787 F. App'x 405, 405–06 (9th Cir. 2019) (holding Appointments

23   Clause challenge based on *Lucia* was forfeited as not timely raised when not brought before the

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 12

Department of Labor Benefits Review Board); *Kabani & Co., Inc. v. SEC*, 733 F. App'x 918, 919 (9th Cir. 2018) (holding Appointments Clause claim forfeited when not raised in briefs or before the SEC).

Plaintiff did not raise her Appointments Clause challenge before the Social Security Administration despite being represented by counsel. AR 32-99, 254-56. Plaintiff's hearing was held on June 28, 2018. AR 32-99. The Supreme Court issued its ruling in *Lucia* on June 21, 2018. *See Lucia*, 138 S. Ct. at 2044. The Commissioner ratified the appointment of SSA ALJs and approved their appointment as her own on July 16, 2018. *See* Social Security Ruling ("SSR") 19–1p, 84 Fed. Reg. 9582-02, 2019 WL 1202036 (Mar. 15, 2019).

The ALJ issued his unfavorable decision on December 5, 2018. AR 10-26. The Appeals Council issued its decision denying review on September 23, 2019. AR 1-6. As such, Plaintiff could have challenged the ALJ's appointment at any time after the *Lucia* decision or raised the issue when requesting review by the Appeals Council. By waiting until after receiving an unfavorable result to raise the issue with this Court, Plaintiff has forfeited her Appointments Clause challenge.

### III.    Other Issues.

Plaintiff contends that the ALJ erred in evaluating her symptom testimony and statements from Plaintiff's mother, Natalie Tajipour Glass, PA-C, and agency personnel who interviewed Plaintiff. Dkt. 12, pp. 12-17. Because Plaintiff will be able to present new evidence and testimony on remand, and because the ALJ's reconsideration of the record may impact her assessment of this evidence, the ALJ shall instead reconsider this evidence as necessary on remand.

1    **IV.      Remedy.**

2           The Court may remand a case "either for additional evidence and findings or to award

3    benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1992). Generally, when the Court

4    reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the

5    agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th

6    Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when

7    evidence should be credited and an immediate award of benefits directed[.]" *Harman v. Apfel*,

8    211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

9           (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
            claimant's] evidence, (2) there are no outstanding issues that must be resolved
10          before a determination of disability can be made, and (3) it is clear from the
            record that the ALJ would be required to find the claimant disabled were such
11          evidence credited.

12    *Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir.

13    2002). The Court is mindful that simply providing another opportunity to assess improperly

14    evaluated evidence, allowing the ALJ to have a "mulligan", does not qualify as a remand for a

15    "useful purpose" under the first part of the credit as true analysis. *Garrison*, 759 F.3d at 1021-22,

16    citing *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to

17    decide the issue again would create an unfair 'heads we win; tails, let's play again' system of

18    disability benefits adjudication.").

19           Here, the Court has determined that the ALJ must evaluate Dr. Salmon's opinions.

20    Therefore, there are outstanding issues which must be resolved and remand for further

21    administrative proceedings is appropriate.

22

23

24

1

<u>CONCLUSION</u>

2      Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded

3 Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and

4 this matter is remanded for further administrative proceedings in accordance with the findings

5 contained herein. The Clerk is directed to enter judgment for Plaintiff and close the case.

6      Dated this 7th day of October, 2020.

7

8      _____
       David W. Christel
9      United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24